[No. H022134. Sixth Dist. Jan. 15, 2003.]

LO NGUYEN, Plaintiff and Respondent, v.
RICHARD CALHOUN et al., Defendants and Appellants.

## COUNSEL

Adleson, Hess & Kelly, Phillip M. Adleson and Patric J. Kelly for Defendants and Appellants.

Hovey & Kirby, Martin T. McGuinn and Dean T. Kirby, Jr., for California Trustee's Association as Amicus Curiae on behalf of Defendants and Appellants.

Mount & Stoelker and James L. Stoelker for Plaintiff and Respondent:

## OPINION

**WUNDERLICH, J.**—In this case, we are called upon to resolve competing claims of ownership to residential real property. The plaintiff claims his title as a result of purchasing the property from the previous owners, who were then in default on their secured real estate loan. The defendants claim their title as a result of purchasing the property the same day at the lender's foreclosure sale.

The trial court gave judgment for the plaintiff. The defendants appeal.

For reasons explained below, we reverse the judgment.

### FACTS

The facts in this case are largely undisputed.[1]

In May 1994, Josephina Sabedra, Tony David Chavez, and Tina Chavez (collectively Chavez) were the owners of a home located in San Jose (the property). At that time, Chavez obtained a loan, which was evidenced by a promissory note (the note) and secured by a first deed of trust on the property (the deed of trust).

The Chavez note and deed of trust were later assigned to Harbor Financial Mortgage Corporation (Harbor). Harbor's business office was in Houston, Texas.

In December 1997, Chavez stopped making payments on the loan.

---

[1]The parties submitted the case to the trial court on a stipulated fact statement and exhibits, supplemented by testimony from one witness. The record on appeal also includes declarations filed in connection with the parties' respective summary adjudication and summary judgment motions. Some of the evidence in those declarations was undisputed.

In March 1998, Harbor recorded a notice of default and election to sell.

Thereafter, Chavez was approached by real estate agent Edgar Rivera (Rivera). In mid-April 1998, Chavez signed a listing agreement with Rivera in an effort to sell the property before foreclosure could take place.

In late April 1998, Chavez entered into a contract to sell the property to plaintiff Lo Nguyen (plaintiff). Rivera represented both Chavez as seller and plaintiff as buyer in the sale. Plaintiff was aware of the pending foreclosure proceedings at the time he entered into the contract.

Chavez opened an escrow with Financial Title Company (Financial Title). Pursuant to the property sale contract, escrow was to close by late May 1998. Escrow did not close by the scheduled date.

While the escrow was pending, Financial Title requested loan payoff information from Harbor. Harbor submitted a payoff statement in response to each of Financial Title's three requests. The first payoff statement was good to May 13, 1998; the second was good to July 8, 1998; the third was good to July 9, 1998. Neither Chavez, nor Financial Title, nor Rivera contacted Harbor to get updated payoff figures after July 9, 1998. Harbor's payoff statements included a Houston mailing address for sending funds.

Meanwhile, in late June 1998, Harbor recorded a notice of trustee's sale; the sale was scheduled for July 9, 1998. Financial Title was aware of the scheduled trustee's sale. Financial Title also knew that the sale had been postponed one day at the trustee's discretion and was set to go forward on July 10, 1998, at noon.

Sometime on July 9, 1998, Rivera telephoned Linda Kubricht of Harbor and requested that Harbor postpone the trustee's sale. Kubricht left a voice mail message for Rivera, stating that Harbor would postpone the trustee's sale if Rivera could provide proof that plaintiff's new loan had funded. There was no written agreement to postpone the trustee's sale beyond July 10, 1998, at noon, however. After business hours on July 9, 1998, Rivera left a voice message for Linda Kubricht, informing her "that the escrow was supposed to fund the next morning and that he would try to fax something."

Plaintiff's new loan in fact funded, and the funds were received in escrow by wire on July 9, 1998, at 1:30 p.m.

On Friday, July 10, 1998, Financial Title closed escrow on the sale from Chavez to plaintiff. The escrow closing statement allocated $141,664.22 to

pay off Harbor's loan, and Financial Title sent a check in that amount to Harbor at its office in Houston, using Federal Express delivery. Harbor did not receive the check until July 13, 1998. In addition to disbursing funds at the close of escrow, Financial Title also recorded escrow documents that day. Among the documents recorded on July 10, 1998, was the grant deed transferring title to the property to plaintiff. However plaintiff's grant deed would not have been indexed by the recorder's office until the next business day, Monday, July 13, 1998.

At Rivera's request, Financial Title's escrow officer transmitted a certified copy of the final escrow settlement statement to Harbor by facsimile. That facsimile transmission was sent at 8:23 a.m. California time on July 10, 1998. The transmission was sent using a fax number provided by Rivera, rather than the number listed at the bottom of Harbor's payoff statements. The transmission was directed to "Linda Cooper" at Harbor; Harbor employed no one by that name.

Linda Kubricht did not receive the facsimile transmission from Financial Title on July 10, 1998, nor did she hear from anyone concerning the escrow that morning.[2]

The foreclosure was allowed to proceed as scheduled on July 10, 1998, at noon. The foreclosure trustee complied with all statutory requirements prior to and at the sale. The only bidder at the sale was defendant Richard Calhoun (Calhoun), a licensed real estate broker and an occasional investor in real property foreclosures. At the time of the foreclosure sale, Calhoun had no notice of any agreements, discussions, or arrangements between or among Chavez, plaintiff, Rivera, Harbor, or Financial Title, nor did he then have any notice or suspicions of any claimed improprieties in the foreclosure proceedings. Neither plaintiff, nor Chavez, nor Rivera attended the foreclosure sale. With his own funds and funds provided by defendant Toribio Valdivia (Valdivia), Calhoun bid $141,631.27 for the property. The crier accepted Calhoun's bid and gave Calhoun a sworn declaration of trustee's sale. As is customary, the trustee's deed was to be delivered later.

As a result of the events at the foreclosure sale, at the end of the day on Friday, July 10, 1998, defendants Calhoun and Valdivia believed they had purchased the property from the trustee.

---

[2] In her declaration, Kubricht states that she attempted to page Rivera that morning but her pages went unanswered. She also states she checked "periodically" that morning for an incoming fax but "never saw anything come in." Kubricht further declares that the facsimile cover sheet contained no reference either to the borrowers' name or to the loan number. According to another declaration in the record—that of Harbor employee Allen Holton—the cover sheet did not identify the transmission as urgent.

As a result of the events in the escrow, at the end of the day on Friday, July 10, 1998, plaintiff believed he had purchased the property from Chavez.

The problem came to light the following week. On Monday, July 13, 1998, Linda Kubricht at Harbor received the errant facsimile transmission from Financial Title. Harbor also received the check from Financial Title that day, which it cashed in the normal course of business. Three days later, Harbor issued a refund check to Financial Title and Chavez, mailing it with a cover letter explaining why the funds were being returned. Meanwhile, Financial Title's request for a deed of reconveyance was declined. A request to rescind the trustee's sale also was declined. Sometime between July 16 and July 28, 1998, Calhoun was informed that there was an issue delaying delivery of the trustee's deed. Sometime after July 28, 1998, Rivera told Calhoun that someone else had purchased the property.

After some three weeks of investigation, on July 31, 1998, the trustee sent its trustee's deed to Calhoun by Federal Express. Calhoun received and recorded the trustee's deed on August 3, 1998. By then, he had received a copy of plaintiff's grant deed. The trustee's deed contains recitals indicating statutory compliance by the trustee.

## PROCEDURAL HISTORY

In August 1998, plaintiff brought this action, seeking quiet title, declaratory relief, and attorneys' fees against defendants Calhoun and Valdivia.[3] Defendants demurred. The trial court sustained defendants' demurrer as to the attorneys' fees claim, but otherwise overruled it. Defendants answered, interposing plaintiff's failure to properly tender payment as an affirmative defense.

Defendants brought a motion for summary judgment, or, in the alternative, for summary adjudication. Plaintiff brought a motion for summary adjudication. The trial court denied both motions.

The dispute between plaintiff and defendants eventually proceeded to a one-day bench trial in July 2000. The evidence in the case was largely

---

[3]Plaintiff also sued both Harbor and Statewide Lenders Services, Inc., the foreclosure trustee (Statewide). The record does not indicate how or whether plaintiff's claims against Harbor or Statewide were resolved.

Harbor also cross-complained against Chavez, Rivera, and Financial Title. The cross-complaint was dismissed as against Chavez and Rivera. The record does not indicate how or whether Harbor's claims against cross-defendant Financial Title were resolved.

Of the litigants named in the pleadings, only plaintiff and defendants are parties to this appeal.

undisputed, consisting of a stipulated fact statement and exhibits, plus the live testimony of a single expert defense witness who addressed issues concerning the escrow. After the presentation of evidence, the case was argued and submitted the same day.

The court issued its statement of decision within a week, finding for plaintiff. The trial court described the question before it as "purely a legal one of whether a sale to the plaintiff of the subject property occurred prior to the later trustee's sale to the Defendants . . . ." The court concluded that the case was "controlled by 'escrow law'" and that "the presence of a pending trustee's sale" was "of no consequence in this determination . . . ." The court found that all the required conditions of escrow were timely met. It therefore determined "that title passes to plaintiff, and that the trustee's deed to Defendants is null and void . . . ."

The court entered judgment for plaintiff the following month.

This timely appeal by defendants ensued. The California Trustee's Association appears as amicus curiae in support of defendants' appeal, seeking to clarify the law of nonjudicial foreclosure.

### APPEALABILITY

None of the parties to this appeal raised the threshold issue of whether the judgment is appealable. Nevertheless, "since the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion." (*Olson v. Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720].)

■ Under the "one final judgment" rule, an order or judgment that fails to dispose of all claims between the litigants is not appealable under Code of Civil Procedure section 904.1, subdivision (a). "[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143]; see also *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307-308 [63 Cal.Rptr.2d 74, 935 P.2d 781]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 697-698 [86 Cal.Rptr.2d 657] [unresolved cross-complaint].)

■ In applying that rule to this case, two finality issues emerge. The first issue concerns the complaint: it is not clear from the record as filed that

plaintiff's claims were resolved with respect to defendants Statewide and Harbor. The second issue involves Harbor's cross-complaint: the record does not reflect any resolution of that pleading as to cross-defendant Financial Title.

Because we could not ascertain whether the action and cross-action had been finally resolved as to all parties, we asked the parties for supplemental briefing on the issue. The response from plaintiff confirms that not all claims have been finally adjudicated as to all parties. Nevertheless, that response satisfies us that appellate jurisdiction is proper here.

This action is a multiparty lawsuit, and the judgment is final at least with respect to plaintiff's claims against defendants Calhoun and Validivia. "It is settled that the rule requiring dismissal does not apply when the case involves multiple parties and a judgment is entered which leaves no issue to be determined as to one party. [Citations.]" *(Justus v. Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122] [husbands and wives as plaintiffs; demurrer sustained only as to husbands], disapproved on another ground in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1]; accord, *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880 [154 Cal.Rptr. 591] [multiple defendants; dismissal after demurrer as to some but not all]; see also *Stonewall Ins. Co. v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810, 1830 [54 Cal.Rptr.2d 176]; see generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶ 2:91, p. 2-49; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 69, p. 126.) Thus, even if plaintiffs' action is still pending against Statewide and Harbor, and even if Harbor's cross-action is still pending against Financial Title, the judgment is final as between plaintiff and defendants Calhoun and Valdivia.

We conclude that there are no jurisdictional obstacles to our review of the dismissal order. We therefore consider defendants' appeal from the judgment on its merits.

### STANDARD OF REVIEW

■ We agree with plaintiff that this case presents a question of law for our independent review. First, it was submitted on stipulated facts. (See, e.g., *Oliver & Williams Elevator Corp. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249] [case tried on stipulated facts and documents with no oral evidence presents question of law]; cf., *McKinney v. Kull* (1981) 118 Cal.App.3d 951, 956 [173 Cal.Rptr. 696] [agreed facts provide only the basis for inferences; conflicting inferences present question

of fact]; accord, *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632-634 [80 Cal.Rptr.2d 378] [decision based on oral stipulation reviewed for substantial evidence]; see generally 9 Witkin, Cal. Procedure, *supra,* Appeal, § 373, pp. 423-424.) Moreover, because "the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently." (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278] [independent review of question whether property is a fixture].)

ISSUES

Though the parties frame the issues variously, the pivotal questions before us may be fairly summarized as follows: (a) What effect did the pending foreclosure proceedings have on the escrow? (b) Was the lender's lien extinguished by satisfaction of the debt prior to the foreclosure sale? (c) Are there other grounds for invalidating the foreclosure sale?

DISCUSSION

We begin our analysis by setting forth the relevant legal principles that govern real property security interests. We then apply those principles to the facts of this case.

1. *Legal Principles*

 a. *Creation and effect of the security interest*

"A real property loan generally involves two documents, a promissory note and a security instrument. The security instrument secures the promissory note. This instrument 'entitles the lender to reach some asset of the debtor if the note is not paid. In California, the security instrument is most commonly a deed of trust (with the debtor and creditor known as trustor and beneficiary and a neutral third party known as trustee).'" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 [44 Cal.Rptr.2d 352, 900 P.2d 601], quoting Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 1.3, p. 5.)

"Real property is transferable even though the title is subject to a mortgage or deed of trust, but the transfer will not eliminate the existence of that encumbrance. Thus, the grantee takes title to the property subject to all deeds of trust and other encumbrances, whether or not the deed so provides.

This means that the property may be sold on foreclosure of that deed of trust if the debt is not paid, even though the property is no longer owned by the original debtor." (2 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 3d ed. 2002) § 9.119, p. 667; see also 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds of Trust and Mortgages, § 10:208, p. 635.)

### b. *Satisfaction of the obligation*

■ "A security interest cannot exist without an underlying obligation, and therefore a mortgage or deed of trust is generally extinguished by either payment or sale of the property in an amount which satisfies the lien. [Citations.]" (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1235, fn. omitted; see also Civ. Code, § 1473[4] [performance extinguishes obligation].) Proper tender of payment also may extinguish the lien. (*Winnett v. Roberts* (1986) 179 Cal.App.3d 909, 922 [225 Cal.Rptr. 82]; see §§ 1485 [offer of performance extinguishes obligation], 2905 ["Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay"].)

■ "The doctrine of tender has been correctly summarized in this fashion: 'The rules which govern tenders are strict and are strictly applied, and where the rules are prescribed by statute or rules of court, the tender must be in such form as to comply therewith. The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.' " (*Gaffney v. Downey Savings & Loan Assn.* (1988) 200 Cal.App.3d 1154, 1165 [246 Cal.Rptr. 421], italics omitted, quoting 86 C.J.S., Tender, § 27, pp. 570-571; see generally 4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages, § 10:197, pp. 590-592.) In other words, with respect to tender, "it is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." (*Gaffney v. Downey Savings & Loan, supra,* 200 Cal.App.3d at p. 1165.)

■ Similarly, with respect to payment, "the trustor must pay the debt . . . according to its terms to protect the property from loss by foreclosure." (4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages, § 10:71, pp. 216-217, fn. omitted.) "The deposit of a payment check in the mail does *not* constitute payment. The borrower assumes the risk that the deposited payment will be delivered and received by the beneficiary. When

---

[4]All further statutory references are to the Civil Code unless otherwise indicated.

a creditor *directs* a debtor to mail payment, it is deemed that the payment is made when it is deposited in the mail. Otherwise, the payment is *not effective* until received by the creditor." (*Id.* at § 10:72, p. 225, fn. omitted, italics added; see *Cornwell v. Bank of America* (1990) 224 Cal.App.3d 995, 999-1000 [274 Cal.Rptr. 322] [supplying payment envelopes is not a direction by lender to mail payments].)

█ "The trustor-mortgagor or the person who alleges that a debt has been paid has the burden of proving payment." (4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust and Mortgages, § 10:71, p. 217, fn. omitted.)

In sum, on adequate proof that payment has been properly made or tendered, the debt is satisfied and the lien is extinguished. If the lien has been extinguished, there can be no foreclosure sale. (*Lichty v. Whitney* (1947) 80 Cal.App.2d 696, 702 [182 P.2d 582] [valid tender released security; subsequent trustee's sale was void]; cf. *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 724 [346 P.2d 814] [accepting payment of amount in default precluded foreclosure].) On the other hand, if the lien has not been extinguished and the debt is in default, the lender may institute nonjudicial foreclosure proceedings.

### c. *Foreclosure*

█ "In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust." (*Alliance Mortgage Co. v. Rothwell, supra,* 10 Cal.4th at p. 1236, citing Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, §§ 1.28, p. 37, 2.1, p. 51.)

"[S]ections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777], citing 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) §§ 9:121, p. 388, 9:154, pp. 505, 516; accord, *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 503 [108 Cal.Rptr.2d 10].)

█ "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." (*Moeller v. Lien, supra,* 25 Cal.App.4th at p. 831, citing *Smith v. Allen* (1968) 68 Cal.2d 93, 96

[65 Cal.Rptr. 153, 436 P.2d 65].) As a general rule, a trustee's sale is complete upon acceptance of the final bid. (*Angell v. Superior Court, supra,* 73 Cal.App.4th at p. 701, citing *Moeller v. Lien, supra,* 25 Cal.App.4th at p. 831; accord, *Ballengee v. Sadlier* (1986) 179 Cal.App.3d 1, 4-5 [224 Cal.Rptr. 301] [trustee's sale declaration signals completion]; see also § 2924h, subd. (c); and see generally 4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages, § 10:206, p. 628.) But "the general rule is not applicable when a notice defect renders the sale void." (*Angell v. Superior Court, supra,* 73 Cal.App.4th at p. 701, citing *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362 [233 Cal.Rptr. 923].)

■ "The purchaser at a foreclosure sale takes title by a trustee's deed." (*Moeller v. Lien, supra,* 25 Cal.App.4th at p. 831.) In certain circumstances, the trustee may refuse to issue a trustee's deed to the successful bidder at the sale. One such circumstance is failure of the bidder's consideration. (§ 2924h, subd. (c) [trustee may rescind sale for failure of consideration].) Other circumstances that may justify the trustee's refusal to issue a deed include defects in the statutory notices and irregularities in the sale proceedings. (See, e.g., *Little v. CFS Service Corp., supra,* 188 Cal.App.3d at p. 1360 [notice defect]; *Angell v. Superior Court, supra,* 73 Cal.App.4th at p. 701 [notice defect]; *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 317, 322-323 [211 Cal.Rptr. 582] [sale irregularity coupled with inadequate price].) However, a mistake " 'dehors[5] the sale proceedings' " will not prevent issuance of a trustee's deed. (*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1285 [102 Cal.Rptr.2d 711], fn. omitted [bidding mistake by foreclosing beneficiary does not invalidate foreclosure], quoting *Crofoot v. Tarman* (1957) 147 Cal.App.2d 443, 447 [305 P.2d 56] [mistake concerning postponed sale date does not invalidate foreclosure].) Absent defects in the foreclosure procedure itself, delivery of the trustee's deed following a foreclosure sale is "merely a ministerial act." (*Ballengee v. Sadlier, supra,* 179 Cal.App.3d at p. 4.)

■ "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. [Citations.]" (*Moeller v. Lien, supra,* 25 Cal.App.4th at p. 831; see generally 4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages, § 10:211, pp. 647-652; 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra,* § 7:59, pp. 476-477.)

"The conclusive presumption precludes an attack by the trustor on the trustee's sale to a bona fide purchaser even where the trustee wrongfully

---

[5]The word "dehors" means: "Out of; without; beyond; foreign to; unconnected with." (Black's Law Dict. (6th ed. 1990) p. 424, col. 2.)

rejected a proper tender of reinstatement by the trustor." (*Moeller v. Lien, supra,* 25 Cal.App.4th at pp. 831-832.) A bona fide purchaser is one who pays value for the property without notice of any adverse interest or of any irregularity in the sale proceedings. (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451 [268 Cal.Rptr. 202]; see generally 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra,* § 7.61, p. 478.) There is authority suggesting that an experienced foreclosure bidder may not qualify as a bona fide purchaser. (See *Estate of Yates* (1994) 25 Cal.App.4th 511, 523 [32 Cal.Rptr.2d 53].)

## 2. *Application to this case*

To resolve the dispute before us, we apply the foregoing legal principles to the undisputed facts presented below. In doing so, we first analyze the effect of the pending foreclosure proceedings on the escrow. We next consider whether the lien was extinguished by satisfaction of the debt prior to the foreclosure sale. We then examine whether other grounds exist for invalidating the foreclosure sale.

### a. *Effect of default on escrow*

■■ ■■ ■■ The trial court concluded that the parties' dispute was "controlled by 'escrow law.' "[6] The court further concluded that "the presence of a pending trustee's sale" was "of no consequence in this determination" and did "not impact or place any legal requirements on the threshold determination of whether a timely sale occurred between the Chavezes and the Plaintiff." The court then determined that title to the property passed to plaintiff on July 9, 1998, because Financial Title then held sufficient funds to pay the amount due Harbor according to its third payoff statement.

■■ But the trial court's conclusion that title passed to plaintiff before the trustee's sale does not support judgment in his favor. As grantee, plaintiff took his title to the property subject to Harbor's preexisting deed of trust. (See 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra,* § 9.119, p. 667; 4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages, § 10:208, p. 635.) Thus, in order to protect his interest in the property from the pending foreclosure, plaintiff had to ensure that the underlying obligation to Harbor was satisfied.

---

[6] " 'An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition.' [Citations.]" (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 [27 Cal.4th 1160a, 117 Cal.Rptr.2d 541, 41 P.3d 548].) "An escrow holder is an agent and fiduciary of the parties to the escrow. [Citations.]" (*Ibid.*; see generally *id.* at pp. 711-714.)

### b. *Satisfaction of the obligation*

We therefore consider this critical question: Was the debt paid prior to the foreclosure sale? As defendants acknowledge, if the debt was paid prior to the foreclosure sale, then the lien was extinguished, the foreclosure sale is invalid, and plaintiff is the rightful owner of the property. (See, e.g., *Lichty v. Whitney, supra,* 80 Cal.App.2d at p. 702.) But defendants and amicus curiae argue that plaintiff did not and cannot prove timely satisfaction of the underlying obligation. In support of that argument, they point out that payment was not made by certified funds as required. Defendants also rely heavily on the fact that payment was not received until after the foreclosure sale.

We agree with defendants that the debt was not paid prior to the foreclosure sale. As we explained above, as a general rule, depositing a check in the mail (or, as in this case, with a courier) does not constitute payment. (4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust and Mortgages, § 10:72, p. 225.) As we also explained, there is an exception to that general rule where the lender has directed the borrower to mail the payment. (*Ibid.*) But merely supplying a mailing address does not constitute a direction to mail the payment. (See *Cornwell v. Bank of America, supra,* 224 Cal.App.3d at pp. 999-1000.) In *Cornwell,* the borrower mailed a loan payment that the lender never received. The court concluded as a matter of law that payment had not been made. (*Ibid.*) In doing so, the court rejected the borrower's claim that the lender had directed him to mail payments by providing envelopes and loan payment coupons that stated " 'Detach and mail with payment' " and " 'Mail this coupon with check payable to Bank of America.' " (*Id.* at p. 999.) As the court stated: "Nothing on the coupon prevents the debtor from making payment in person at a local branch of the bank, or from using the other available alternatives." (*Id.* at p. 1000.) The same is true in this case. Contrary to plaintiff's assertion, Harbor's payoff statement did not constitute an assurance in writing that "sending a check by regular mail would suffice." As in *Cornwell*, the lender in this case did not direct its borrowers—or the escrow holder—to mail it a payment check. In the absence of such a direction, "the payment is not effective until received by the creditor." (4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust and Mortgages, § 10:72, p. 225.) Here, the payment sent by the escrow holder via Federal Express was not received until three days after the foreclosure sale. Thus, the debt remained unsatisfied as of the time of the foreclosure sale.

For that reason, the validity of the foreclosure sale cannot be challenged on the ground that the debt was paid and the lien was thereby extinguished.

### c. *Foreclosure*

We therefore consider whether there is any other basis for invalidating the foreclosure sale. Our analysis proceeds on the presumption of validity accorded the foreclosure sale.[7] (See, e.g., *Moeller v. Lien, supra,* 25 Cal.App.4th at p. 831; see generally 4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust and Mortgages, § 10:211, pp. 647-653; 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 7:59, pp. 476-477.)

We first examine plaintiff's suggestion that the foreclosure was conducted in violation of an oral promise to postpone the sale. According to plaintiff, "if the trustee here conducted the foreclosure sale in violation of a promise to forbear by the beneficiary, the sale is wrongful and can be set aside." Plaintiff asserts that there was a "simple," "explicit" agreement that the trustee's sale would be postponed upon "written confirmation" that plaintiff's loan had funded.

Initially, defendants question the enforceability of any promise to postpone. "In the absence of consideration, a gratuitous oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable under section 1698 [the statute of frauds]." (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 673 [111 Cal.Rptr. 693, 517 P.2d 1157] (*Raedeke*), citing *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 121 [92 Cal.Rptr. 851].)

But the borrowers' "procurement of a responsible, prospective purchaser at [the lender's] request would constitute good consideration" for a promise by the lender to postpone its foreclosure sale. (*Raedeke, supra,* 10 Cal.3d at p. 673.) In *Raedeke,* the Supreme Court concluded that the borrowers had a cognizable cause of action at law because they relied on the lender's promise to postpone the foreclosure sale if they obtained a solvent buyer.

Plaintiff relies on *Raedeke* in urging that Harbor misrepresented or breached its promise to postpone. But at least two key factors set this case apart from *Raedeke*. First, plaintiff here did not sue at law for breach of an oral promise; instead he sued in equity for quiet title and declaratory relief. (Cf. *Raedeke, supra,* 10 Cal.3d at pp. 668, 671-672, 674-675 [plaintiffs' action was at law, not in equity].) Second, in this case, no one involved with the escrow properly tendered performance of the oral agreement. (Cf. *id.* at p. 670 [jury made a special finding that plaintiffs procured a purchaser prior

---

[7]As we explain, we find no grounds at all for invalidating the foreclosure sale. For that reason, we need not and do not determine whether the presumption of validity that clothed this sale was conclusive or merely rebuttable.

to the foreclosure sale].) The borrowers' part of the bargain included notifying the lender—in a timely and accurate manner—that their prospective purchaser had funding to pay off the loan. (Cf. *id.* at p. 669 [plaintiff alleged that they "procured a willing buyer and so advised" the lender]; cf. *Gaffney v. Downey Savings & Loan, supra,* 200 Cal.App.3d at pp. 1165-1166 [plaintiffs' failure to notify lender of payment method resulted in invalid tender].) Quite simply, the borrowers did not satisfy their part of the bargain.

In this case, then, we conclude that the foreclosure sale may not be set aside based on the lender's alleged breach of an oral agreement to postpone the trustee's sale. (See *Karlsen v. American Sav. & Loan Assn., supra,* 15 Cal.App.3d at p. 121.)

The only other ground plaintiff suggests for setting aside the foreclosure sale is irregularity in the sale coupled with inadequate price. (See, e.g., *Whitman v. Transtate Title Co., supra,* 165 Cal.App.3d at pp. 317, 322-323.) Plaintiff characterizes the conduct of the sale as an "irregularity" or a "mistake," again based on the failed communications between Harbor and Financial Title. In our view, that characterization does not bear scrutiny.

To justify setting aside a presumptively valid foreclosure sale, the claimed irregularity must arise from the foreclosure proceeding itself. (*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., supra,* 85 Cal.App.4th at p. 1285; *Crofoot v. Tarman, supra,* 147 Cal.App.2d at p. 447.) A mistake that occurs outside (dehors) the confines of the statutory proceeding does not provide a basis for invalidating the trustee's sale. (*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., supra,* 85 Cal.App.4th at p. 1285; *Crofoot v. Tarman, supra,* 147 Cal.App.2d at p. 447.) Here, the mistake on which plaintiff relies was dehors the foreclosure. It did not occur in connection with any statutorily required notices, nor did it occur in connection with the bidding process at the sale. Rather, the mistake resulted from miscommunications related to an agreement for a nonstatutory postponement. That mistake does not constitute an irregularity in the foreclosure proceeding itself.

In sum, the claimed "irregularity" does not constitute adequate grounds to invalidate the trustee's sale. The record furnishes no other ground—either factual or legal—for setting aside the foreclosure. The trial court therefore erred in invalidating the foreclosure sale.

## CONCLUSION

Given the undisputed facts of this case, there is no basis for invalidating the foreclosure sale. The debt giving rise to the lender's lien was not

satisfied prior to foreclosure; the foreclosure sale thus cannot be set aside on the ground that the lien was extinguished prior to sale. And there is no irregularity in the foreclosure proceeding itself warranting invalidation of the trustee's sale.

## DISPOSITION

The judgment is reversed and the cause remanded. The trial court is directed to enter a new and different judgment in favor of defendants Calhoun and Valdivia and against plaintiff Nguyen.

Defendants shall have costs on appeal.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied February 13, 2003.