Filed 1/21/16  Brown v. CitiMortgage CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD W. BROWN et al., | B260702 |
| Cross-Complainants and Appellants, | (Los Angeles County Super. Ct. No. PC055028) |
| v. | |
| CITIMORTGAGE, INC., | |
| Cross-Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin Sandvig, Judge.  Affirmed.

Randall A. Spencer for Cross-Complainants and Appellants.

Wolfe & Wyman, Stuart B. Wolfe and David M. Chute for Cross-Defendant and Respondent.

Cross-complainants Richard W. and Diane Y. Brown (Browns) appeal from a judgment dismissing with prejudice the operative first amended cross-complaint (FACC) against cross-defendant and respondent CitiMortgage, Inc. (respondent or CitiMortgage), after the trial court sustained respondent's demurrer to the FACC without leave to amend.  We affirm the judgment of dismissal.

## BACKGROUND

As explained more fully below, the trial court sustained respondent's demurrer to the Browns' FACC without leave to amend on the grounds, inter alia that the FACC was barred by the doctrine of res judicata and by the Statute of Frauds.  To put the court's ruling in context, we begin with the allegations of the FACC, and then summarize relevant procedural events in this and prior actions.

I.     *The FACC*[1]

The Browns owned a home in Valencia, California (the Property).  On November 2, 2002, they obtained a mortgage loan for $250,090 (the loan) from respondent's predecessor in interest.  The loan was secured by a deed of trust.  The loan had a maturity date of December 1, 2009, but included a balloon rider which, subject to certain conditions would, upon maturity, permit the Browns to obtain a new loan with a maturity date of December 1, 2032.  The Browns made all monthly payments on the loan up to and including December 1, 2009.

---

[1]     On review from an order sustaining a demurrer we accept as true the factual allegations of the operative pleading.  (*Lucras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 55.)

In mid-October 2008, the Browns received a letter from respondent notifying them the loan would mature on December 1, 2009, and that their options included making a lump sum payment of the loan balance, or resetting the mortgage loan according to the terms of balloon rider, provided they satisfied certain conditions. The Browns chose to obtain a new loan under the balloon rider, and satisfied the conditions contained in respondent's October 15, 2008 letter. On September 9, 2009, they mailed a completed form entitled "Borrower's Intention/Request Statement, Borrower's Notice to Servicer as Requested by the Balloon Note Addendum and Balloon Rider" (Borrower's Intention Form) notifying CitiMortgage that they had satisfied all prerequisites and were electing to exercise the reset option of the balloon rider. Later that month, the Browns contacted respondent to confirm that it had received the completed Borrower's Intention Form. CitiMortgage confirmed its receipt of the Borrower's Intention Form, but said the form was ineffective. CitiMortgage also told the Browns they were not eligible for a traditional loan, but could apply for a loan modification as part of a new government program in which CitiMortgage was participating to receive a longer new loan at a lower interest rate.

In early November 2009, the Browns received a letter from respondent, dated October 21, 2009, stating they had failed to notify CitiMortgage of their intention with respect to the loan. Accordingly, the entire loan balance was due December 1, 2009. On November 5, 2009, the Browns called respondent regarding its October 21, 2009 letter, in light of the fact that they had returned the Borrower's Intention Form in September. The Browns were unable to contact any representative of CitiMortgage until November 23, 2009, when David (last name

3

unknown[2]) told them their request to reset under the terms of the balloon rider was untimely, and instructed the Browns to apply for a new loan.

On December 1, 2009, the Browns' regular monthly mortgage payment was deducted from their account. On December 3, 2009, the Browns received a letter from respondent—dated December 3, 2009—stating that they were in default on the loan and requesting that they pay the full balance of $221,045.57 by January 2, 2010.

Between December 23, 2009 and March 1, 2010, the Browns contacted respondent numerous times to discuss their confusion regarding the October 21 and December 3, 2009 letters and to investigate the status of their effort to reset the loan and their application for a loan modification. Throughout that period, the Browns informed several of respondent's representatives that they could pay off, or actually offered to pay off, the balance of the loan. Respondent either refused to accept a payoff or its representatives encouraged the Browns to continue seeking a loan modification stating it was in their financial interest to do so, and that the Browns were already being processed in a loan modification program for which they were prequalified.

However, in early March 2010, respondent sent the Browns a letter stating they had been denied a loan modification because they were current on their loan payments and not facing imminent default. From early March through mid-April 2010, the Browns contacted respondent on numerous occasions offering to pay off the loan. At various times, representatives of CitiMortgage continued to refuse to

---

[2]    Most of the CitiMortgage representatives with whom the Browns spoke from November 2009 through April 2011 refused to provide a last name or employee identification number.

4

accept a payoff, told the Browns to remain in the loan modification process for which they were prequalified, or instructed them to submit a new application for a loan modification. In April 2010, the Browns made the equivalent of four monthly mortgage payments (for January through April 2010). In May 2010, respondent returned the equivalent of two monthly payments to the Browns stating that their loan had matured in December 2009, and CitiMortgage was unable to accept a payment of less than the full balance.

From June to October 2010, the Browns continued to contact respondent regarding the status of their loan modification application. They were told, variously, that the application remained under review, or that additional documentation or a new application was required (all of which the Browns provided).

On November 17, 2010, respondent's trustee recorded a Notice of Default and Election to Sell under Deed of Trust on the Property, and recorded a Notice of Trustee's Sale.

On November 24, 2010, the Browns spoke with a representative of CitiMortgage who informed them that, although she could not ascertain why, their application for a loan modification had been closed and CitiMortgage was proceeding with foreclosure. The representative reopened review of the Browns' loan modification application, and the Browns offered to tender the balance of the loan. The representative instructed the Browns to continue pursuing a loan modification, which they were on track to receive. From that point through February 17, 2011, the Browns had numerous contacts with various CitiMortgage representatives regarding the status of their loan modification application. Those representatives assured the Browns that their application remained under review

5

and that CitiMortgage would not proceed with a foreclosure sale while their application for a loan modification was under review.

On February 18, 2011, respondent's trustee recorded a Notice of Trustee's Sale on the Property.

On March 20, 2011, the Browns tendered, and CitiMortgage rejected, payment of the balance of the loan ($221,045.57).

Between April 7 and April 13, 2011, the Browns requested that CitiMortgage postpone the trustee's sale while their loan modification application remained under review. CitiMortgage did not respond to these requests. The Property was sold to cross-defendant JT Homes (which is not a party to this appeal) at a trustee's sale on April 13, 2011.

On April 13, 2011, respondent's representative Derrick McLaughlin, told the Browns the Property had been sold by mistake because CitiMortgage was still reviewing their loan modification application, and the sale would be rescinded.

On April 18, 2011, CitiMortgage repurchased the loan from Freddie Mac, informed the Browns that CitiMortgage was the first lien holder on the Property and reset the Browns' loan ("New Loan").

On April 22, 2011, in reliance on CitiMortgage's representation that it was rescinding the trustee's sale, the Browns paid taxes, insurance and maintenance fees for the Property. On April 22, 25 and May 27, 2011, respondent and/or the Browns contacted JT Homes to inform JT Homes that CitiMortgage was rescinding the trustee's sale, and to cease any eviction action.

On September 7, 2011, the Browns made a third payment of $1,327.78 to respondent on the New Loan.[3]

In mid October 2012, the Browns received a letter from respondent stating their loan had been paid in full.

II.     *Relevant Procedural Events*

A. *Prior Unlawful Detainer Action*

After acquiring the Property at the foreclosure sale and perfecting its title, JT Homes filed an unlawful detainer action against the Browns, who refused to vacate the Property. On June 9, 2011, JT Homes obtained a judgment of possession and a money judgment for $4,000 (representing a rental value of $100 per day for 40 days from April 30 to June 9, 2011). On June 27, 2011, the court issued an order staying execution of the unlawful detainer judgment to July 13, 2011, subject to the Browns' payment to JT Homes of holdover damages of $7,500, which the Browns paid. However, the Browns refused to vacate the Property after July 13, 2011, and remained in possession until November 15, 2012, without JT Homes' consent and notwithstanding its best efforts to enforce its judgment of possession.

---

[3]     The Browns' first two payments were made by applying unused funds they had paid CitiMortgage in May 2010 to payments on the loan.

B. *The Browns' First Los Angeles Superior Court (LASC) Case*[4]

On November 2, 2012, the Browns sued CitiMortgage, among others, in LASC case No. BC494588. In that action, the Browns sought to rescind the foreclosure sale, and sought damages and injunctive relief based on causes of action for breach of contract, specific performance, wrongful foreclosure, fraudulent and negligent misrepresentations, violation of Business and Professions Code section 17200, trustee's breach of statutory duties, declaratory relief and tortious interference with contractual relations. CitiMortgage demurred to the complaint on grounds of uncertainty and the Browns' failure to allege facts sufficient to state a viable claim. (Code Civ. Proc., § 430.10, subds. (e), (f).) Specifically, CitiMortgage asserted that the complaint was barred by the statute of frauds, the tender rule and the conclusive presumption of the validity of the trustee's sale because JT Homes was a bona fide purchaser.

The Browns neither opposed the demurrer, nor filed an amended complaint. Nevertheless, after undertaking its own "careful[] review[]," the trial court "found [CitiMortgage's demurrer] to be well-taken as to its substantive arguments" and on March 4, 2013, "sustained the demurrer without leave to amend."

On March 12, 2013, the Browns filed a motion to vacate the court's March 4, 2013 order pursuant to Code of Civil Procedure section 473, subdivision (b) (section 473). The court denied that motion after the Browns' counsel failed to satisfy either the substantive requirements of section 473 (having submitted only

---

[4]     Respondent refers to other litigation, including at least one adversarial bankruptcy action involving CitiMortgage and one or more of the Browns, and an LASC case (No. PC051080), filed in July 2011 by the Browns for "wrongful foreclosure," among other things, which they dismissed in January 2012 after CitiMortgage filed a demurrer. None of that litigation is relevant here.

8

the declaration of his "legal assistant") or the procedural requirements of Code of Civil Procedure section 1005 (providing insufficient notice).

On April 17, 2013, the Browns' counsel filed a second motion to vacate, predicated again on section 473, subdivision (b). Unlike the prior motion, the second motion to vacate was accompanied by a declaration from the Browns' attorney. The court denied the motion for several reasons: (1) the attorney had failed to effect proper service (Code Civ. Proc., § 2015.5); (2) the second purported motion to vacate was simply an untimely motion for reconsideration of the March 29, 2013 order denying the first motion to vacate (Code Civ. Proc., § 1008), and presented no "new or different facts, circumstances, or law"; and (3) the motion failed to demonstrate "mistake, inadvertence, surprise, or excusable neglect," or anything other than repetitive "sloppy lawyering" on the part of the Browns' counsel.

On June 19, 2013, a judgment dismissing the entire action with prejudice was entered in case No. BC494588. The Browns filed a Notice of Appeal from that Judgment on August 14, 2013, *Brown, et al. v. CitiMortgage, Inc. et al.* (B250796).[5]

---

[5] Pursuant to Evidence Code sections 459, subdivision (a) and 452, subdivision (d), on our own motion, we take judicial notice of: (1) the filing of a notice of appeal in case No. B250796; (2) Division Two's grant, on November 24, 2014, of the Browns' request to dismiss CitiMortgage from that appeal; and (3) Division Two's May 7, 2015 grant of the Browns' request to dismiss the appeal in case No. B250796 in its entirety.

9

C. *The Present Action: JT Homes' Action for Trespass and Holdover Damages and the Browns' Cross-Complaint*

On June 26, 2013, JT Homes sued the Browns in the instant action seeking at least $49,100 for at least 17 months' worth of holdover and trespass damages, in addition to attorney fees, costs and punitive damages, after the Browns refused to vacate the Property after July 13, 2011.

On September 19, 2013, the Browns filed a cross-complaint against CitiMortgage and JT Homes. CitiMortgage's demurrer to the Cross-Complaint was taken off calendar after the Browns filed an FACC on March 14, 2014, alleging causes of actions against CitiMortgage for indemnification, conversion and unjust enrichment.[6]

CitiMortgage demurred to the FACC on grounds of uncertainty and failure to state facts sufficient to constitute a viable cause of action. It argued the FACC was barred by res judicata, the tender rule, the conclusive presumption of the trustee's sale and the statute of frauds.

On September 18, 2014, the court sustained CitiMortgage's demurrer to the FACC without leave to amend. It found the cross-action was barred by the doctrine of res judicata in light of the Browns' admission that their "claims in this action 'were also asserted in the Previous Action [LASC case No. BC494588], which [had been] dismissed by the Court with prejudice.' As such, [the Browns were] precluded from re-litigating those claims . . . ." The court also sustained the demurrer without leave to amend on the alternative bases that the Browns had failed to establish their claims were not barred by their failure to tender the amount

---

[6]    A fourth cause of action for tortious interference with contract alleged against JT Homes is not at issue here.

10

due on the loan, and had failed to overcome the presumption of the validity of the trustee's sale or the Statute of Frauds. Finally, the court noted that the Browns "admit[ted] that a challenge to the foreclosure underlies their claim for indemnification, but [had] fail[ed] to show why the defenses to such a claim would not apply to this case."

An order sustaining CitiMortgage's demurrer to the FACC on grounds of uncertainty and failure to state a cause of action was entered on October 6, 2014, and judgment dismissing the cross-action was entered November 5, 2014. This timely appeal followed.

## DISCUSSION

The Browns argue the trial court erred in sustaining the demurrer to the FACC without leave to amend because their post-foreclosure claims for indemnification and conversion involve different primary rights, they claim are not barred by res judicata, and the judgment in the prior action was not on the merits. They also argue that they should be permitted to amend the FACC to allege claims for fraud and negligent misrepresentation. None of their arguments is persuasive.

Of course, "[o]n appeal from a judgment after a demurrer is sustained without leave to amend, we assume the truth of the facts alleged in the complaint, as well as those facts that reasonably can be inferred from those expressly pleaded, and the facts of which judicial notice can be taken. We determine de novo whether the complaint states facts sufficient to state a cause of action and does not disclose a complete defense. [Citations.]" (*Wolkowitz v. Redland Ins. Co.* (2003) 112 Cal.App.4th 154, 161–162 (*Wolkowitz*).) We may affirm a judgment sustaining a demurrer on any of multiple grounds asserted whether or not that ground was the one upon which the trial court relied. (*Casey v. U.S. Bank Nat. Assn.* (2005) 127

11

Cal.App.4th 1138, 1144 (*Casey*).)  It is an abuse of judicial discretion to sustain a demurrer if there is a reasonable possibility the defect can be cured by amendment. (*Wolkowitz, supra,* 112 Cal.App.4th at pp. 161–162.)  The burden to demonstrate such a reasonable possibility, however, lies squarely with the plaintiff.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1120.)  "'[S]uch a showing can be made for the first time to the reviewing court . . . .'  [Citation.]"  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153–1154.)

1.      *Res Judicata*

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)  "Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.  '"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."'"  (*Id.* at p. 897.)  Whether a new cause of action is the same as one in a prior action is not determined on the basis of the legal theory or relief sought, but by whether both are premised on a violation of the same primary right, i.e., "'the plaintiff's right to be free from the particular injury suffered.'"  (*Id.* at p. 904.)

Res judicata bars a cause of action that was or could have been litigated in a prior proceeding if:  "(1) the present action is on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding.  [Citation.]"  (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 557.)  CitiMortgage has the burden of establishing

12

each element of res judicata.  (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 529.)

The threshold question here is whether the trial court's dismissal of the Browns' first action following its sustaining of respondent's demurrer to the complaint without leave to amend was a final judgment on the merits.  The answer is yes.  A demurrer is a way to decide the merits of a claim based on assumed facts without a trial.  (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 437, fn. 4.)  "A judgment given after the sustaining of a general demurrer on a ground of substance . . . may be deemed a judgment on the merits, and conclusive in a subsequent suit . . . ."  (*Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 52.) The doctrine of res judicata applies to all types of final judgments rendered on the merits and "may apply to a . . . dismissal, *even though entered after sustaining a demurrer, if the demurrer was sustained on substantive grounds.*"  (*Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 216, italics added; see also, *Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1428.)

Even though the Browns did not oppose respondent's demurrer, the trial court undertook its own "careful[] review[]" of that motion, concluded that CitiMortgage's "substantive arguments" were "well-taken," and dismissed the amended complaint with prejudice.  A dismissal with prejudice is determinative of the issues in the action and precludes a party from relitigating those issues.  (*Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1533.)  Although they appealed, the Browns do not dispute that they subsequently dismissed their appeal from that

judgment, which is now final. Nor do they dispute that, as spouses, they are and were in privity with one another in connection with the prior suit.[7]

The Browns assert that res judicata does not apply because their allegations of conversion in the FACC relate to a primary right—the making of three loan payments, and their post-foreclosure payment of property taxes, insurance and maintenance fees—different from the purportedly wrongful foreclosure and loss of their residence alleged in the initial action. They are mistaken. As the California Supreme Court has said with regard to res judicata, the term "cause of action" has a precise meaning. A "cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory . . . advanced. [Citation.] . . . '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief." [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right. [Citation.]" (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 798.)

---

[7] "Under California law, spouses are in privity with each other where the cause of action in the prior litigation was 'community in nature' and the 'proceeds of any judgment that might have been recovered . . . would have belonged to both husband and wife, as community property.' [Citation.]" (*Mueller v. J.C. Penney Co*. (1985) 173 Cal.App.3d 713, 723.) The Browns held title to the note and deed of trust as "husband and wife." There is a rebuttable presumption that "property acquired during marriage . . . other than by gift or inheritance, is community property." (*In re Marriage of Weaver* (2005) 127 Cal.App.4th 858, 864.)

Here, the Browns' allegations in both their first action and the FACC were premised, in substance, on the same essential claims: first, wrongful foreclosure by CitiMortgage, based on its representatives' false promises or negligent representations, upon which the Browns reasonably relied, that CitiMortgage was reviewing their application for a loan modification and that so long as that process remained ongoing the Property would not be sold at foreclosure; and, second CitiMortgage's wrongful failure to rescind the foreclosure sale, after the Property was mistakenly sold at foreclosure, and the Browns relied on CitiMortgage's false promise that it would rescind the sale and provide them a loan modification.

Thus, in the first LASC case, the Browns pled that CitiMortgage breached its promises by refusing to provide the Browns a loan modification, proceeding with the foreclosure, not rescinding the trustee's sale and not timely providing them with the New Loan. They also alleged that, in justifiable reliance on CitiMortgage's false promises, they made payments on the new loan as well as payments for property taxes, insurance and maintenance fees. Virtually the same allegations were in the FACC.

Although they asserted multiple theories of recovery, and still seek to allege more, the question whether a cause of action is identical for purposes of res judicata does not depend on the legal theory or label attached, but on the primary right sought to be protected in each action, and the corresponding duties. All the harms the Browns allegedly suffered resulted from the invasion of the overriding right not to be deprived of ownership or possession of their home through wrongful foreclosure or false or misleading promises of a loan modification that would result in a new loan. Even where there are multiple legal theories on which recovery might be predicated, a single injury gives rise to one claim for relief. (*Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1246-1247.)

15

In the trial court, the Browns chose not to oppose CitiMortgage's res judicata argument in the demurrer to the FACC on the merits. Rather, they conceded that the claims alleged in the FACC were the same as those asserted in their prior case, which the court had dismissed with prejudice and which was then pending on appeal. They argued that, if they succeeded on appeal, they could re-assert those claims against CitiMortgage. Accordingly, they requested that the hearing on CitiMortgage's demurrer to the FACC be stayed pending the outcome on appeal (which the Browns then dismissed against CitiMortgage a few weeks later).

The trial court denied the request and found the Browns barred by the doctrine of res judicata from relitigating their claims. It noted their admission "that the claims in this action 'were also asserted in the Previous Action, which was dismissed by the court with prejudice.'" The trial court found, and we agree, that the claims alleged by the Browns in the FACC arose from the same primary rights as those in the earlier action—their claim of a right to remain in their home, and avoid wrongful foreclosure and financial hardship. Although different labels are attached to the claims, the relief sought from CitiMortgage arises from the same primary rights.

Even though the Browns did not specifically raise the theory of conversion for recovery of their loan payments, property taxes, insurance and maintenance fees prior to filing their cross-complaint or FACC, the claim is nevertheless barred by res judicata. The issue is not whether the Browns actually raised a claim of conversion in their prior action, but whether they could have raised such a claim. The law is settled that a "prior final judgment on the merits not only settles issues that were not actually litigated but also every issue that might have been raised and litigated in the first action." (*Mattson v. City of Costa Mesa* (1980) 106

16

Cal.App.3d 441, 446.) When a matter is within the """"scope of the [prior] action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it . . . . Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable . . . ."""" (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 576.)

The Browns do not argue they were unable to raise a claim regarding CitiMortgage's alleged conversion of their funds in the action filed in November 2012 and not dismissed until June 2013, both dates well after any alleged conversion took place. (See 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 406, p. 1041 [no bar where plaintiff "was unable to rely on a certain theory or to seek a certain remedy or form of relief in the first action"].)

2.    *The Statute of Frauds, Failure to Address Remaining Bases for Dismissal and Request for Leave to Amend*

a.    *Statute of Frauds and Failure to Address Other Bases for Dismissal*

The Browns' cross-action against CitiMortgage is premised on allegations that CitiMortgage verbally assured them they qualified to obtain a loan modification, agreed to review their application to modify their note and deed of trust, promised not to proceed with foreclosure so long as that review process was ongoing and that, after the Property was mistakenly sold, the sale would be rescinded. The claims of fraud and negligent misrepresentation the Browns seek to add to the FACC arise from verbal promises to modify their mortgage loan.

The statue of frauds renders any agreement pertaining to "the sale of real property, or of an interest therein" invalid unless it is memorialized in writing and signed by the party to be charged. (Civ. Code, § 1624, subd. (a)(3).) "A mortgage

17

can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property." (Civ. Code, § 2922.)

An agreement to modify a contract subject to the statute of frauds is itself subject to the statute of frauds. (Civ. Code, § 1698, subd. (c); *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 553-554.) It would thus be pointless to permit the Browns to amend the FACC to allege claims for fraud or negligent misrepresentation arising from CitiMortgage's representatives' verbal promises that their loan was being reviewed for modification, that no foreclosure would occur during that process or that CitiMortgage would rescind the sale. (See, e.g., *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445 ["we conclude that the foreclosure sale may not be set aside based on the lender's alleged breach of an oral agreement to postpone the trustee's sale"] (*Nguyen*).)

The grounds discussed above constitute sufficient bases upon which to affirm the trial court's ruling. A judgment based on an order sustaining a demurrer may be affirmed on appeal if any ground on which the demurrer was based is well taken regardless of whether it was the one on which the court relied. (*Casey, supra,* 127 Cal.App.4th at p. 1144.) Moreover, the Browns' opening and reply briefs fail to address the tender rule or the conclusive presumption that a trustee's sale in favor of a bona fide purchaser is valid, each of which was an independent basis upon which the trial court sustained CitiMortgage's demurrer without leave to amend and dismissed the action. The Browns have forfeited any arguments as to these defenses, each of which constitutes a complete defense and independent basis for sustaining the demurrer without leave to amend. (See *Nguyen, supra,* 105 Cal.App.4th at p. 439 [absent unambiguous proof of tender, complaint for wrongful foreclosure fails to state a cause of action]; *Moeller v. Lien* (1994) 25

18

Cal.App.4th 822, 834 [trustor lacks legal or equitable right, title or interest in property and may not set aside trustee's deed against bona fide purchaser for sale].) An issue or argument not addressed in a party's appellate briefs is deemed forfeited.  (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 19, fn. 12.)

      b.      *The Browns Have Failed to Demonstrate How They Can Amend to Cure Fatal Pleading Deficiencies*

The Browns also argue that, if granted an opportunity to amend the FACC, they can allege claims for fraud and negligent misrepresentation on remand.  It is insufficient, however, for them to assert an abstract right to amend.  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)  Rather, they must "clearly and specifically" set forth the legal authority for the claims they contends they can allege, the elements of each claim, and the specific factual allegations that would establish each of those elements.  (*Ibid*.)  As appellants, the burden is on the Browns to demonstrate "'in what manner'" they can amend the FACC "'and how that amendment will change the legal effect'" of their pleading.  (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 (*Goodman*).)  Leave to amend will not be granted if, as here, amendment would be futile.  (*Vaillette v. Fireman's Fund Ins. Co*. (1993) 18 Cal.App.4th 680, 685.)

The Browns claim that if given the opportunity, they can allege claims for promissory fraud or negligent misrepresentation based on representations made by CitiMortgage's representatives that CitiMortgage never planned to perform, promising to rescind the sale, which were made negligently or with the intent to deceive and to induce their reliance and on which the Browns did in fact rely by paying taxes and insurance on the Property, to their damage.

None of this is new.  The FACC's claims for indemnification, conversion and unjust enrichment are replete with allegations that the Browns actually and justifiably relied to their detriment on the intentional or negligent misrepresentations by CitiMortgage representatives—including allegations that CitiMortgage told the Browns the Property should not have been sold because their loan modification was still being reviewed and that the sale would be rescinded— and suffered damages as a result, including loan, tax, insurance and maintenance payments they would not otherwise have paid.  The Browns have the burden of showing how they can amend the pleading and how those amendments will change the legal effect of the pleading.  (*Goodman, supra,* 18 Cal.3d at p. 349.)  Leave to amend should be denied if, as shown here, the undisputed facts give rise to no liability as a matter of law.  (*Routh v. Quinn* (1942) 20 Cal.2d 488, 493.)  Neither in their opposition to the demurrer, nor in their briefs on appeal, did the Browns point to any facts that would illustrate how they could amend the FACC or how a proposed amendment would change the legal effect of that pleading.  (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [to be afforded opportunity to amend, party must demonstrate manner in which complaint can be amended and how amendment will change legal effect of the pleading]; *Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1264.)

//

//

//

//

//

20

## DISPOSITION

The judgment is affirmed.  Respondent CitiMortgage is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:


MANELLA, J.


COLLINS, J.


21