[No. B233168. Second Dist., Div. Three. Mar. 22, 2012.]

BARRETT BUSINESS SERVICES, INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and RAFAEL RIVAS,
Respondents.

598

COUNSEL

Hinshaw & Culbertson and Filomena E. Meyer for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Law Offices of Carl A. Feldman, Carl A. Feldman; Law Offices of Susan M. Garrett and Susan M. Garrett for Respondent Rafael Rivas.

OPINION

KITCHING, J.—

## INTRODUCTION

In this proceeding we address the issue who must bear the loss when a stolen check with a forged indorsement is cashed and the payee never receives the check. A compromise and release of the workers' compensation claim of applicant Rafael Rivas contained an incorrect address for Rivas. His employer, Barrett Business Services, Inc. (Barrett), sent a $17,000 check to Rivas at the incorrect address. Rivas never received the check, which was stolen and negotiated with a forged indorsement at a check-cashing service and was paid by Barrett's bank. We hold that because delivery of the check to Rivas did not occur, issuance of the check did not discharge Barrett's underlying obligation to Rivas and Barrett remains liable to Rivas on that obligation. Thus the workers' compensation administrative law judge's order and award correctly found that Barrett was liable to pay settlement proceeds of $17,000 to Rivas. Barrett petitioned to the Workers' Compensation Appeals Board (WCAB) for reconsideration of that order and award. The WCAB denied reconsideration. Barrett filed a petition for writ of review of the WCAB order denying reconsideration. We granted Barrett's petition and issued a writ of review. We affirm the WCAB order.

## FACTUAL AND PROCEDURAL HISTORY

Barrett employed Rafael Rivas as a laborer. On May 14, 2005, Rivas sustained injury to his low back arising out of and in the course of employment. Rivas filed and served an application for adjudication, claim form, and disclosure statement on May 26, 2005, at which time Rivas lived at 2633 West 5th Street in San Bernardino. Also in May 2005, Rivas executed a power of attorney empowering his attorney, Carl Feldman, to sign legal documents, including settlement, that were in Rivas's best interests. Rivas moved to 1556 West Evans Street in San Bernardino sometime before April 2007, although no notice of this change of address was in the workers' compensation file. On April 19, 2007, Rivas's attorney filed a notice of Rivas's change of address to 2095 Walnut Street in San Bernardino, and served that notice of change of address on Barrett but not on defense counsel or on Barrett's adjusting agent, Pinnacle Claims Services in Rocklin, California.

In 2007, Barrett stopped using Pinnacle Claims Services as its claims adjusting agent and moved its claims unit in-house. No notice of this change was in the workers' compensation file, which still listed Pinnacle Claims Services as adjuster of record as late as February 10, 2010.

On May 21, 2008, Rivas moved to 12040 Peach Street, Lynwood, California. On June 11, 2008, Rivas's attorney filed and served a notice of Rivas's change of address to 214 South Fairmont Avenue, Tyler, Texas. The notice was served on defense counsel and on Pinnacle Claims Service, as it was still listed as adjusting agent of record. There was no copy of this change of address in Barrett's claims file. Rivas has since moved to Florida.

Based on prior settlement negotiations, before September 4, 2008, Barrett prepared and forwarded a compromise and release (C&R) to Rivas's attorney. That C&R bore Rivas's incorrect address of 1556 West Evans Street, San Bernardino. Rivas's attorney, Carl Feldman, signed the C&R for Rivas pursuant to the special power of attorney executed by Rivas. Feldman returned the C&R to Barrett's attorneys, who signed and returned it to Rivas's attorney for "walk-through." A workers' compensation judge approved the $20,000 settlement less $3,000 payable to Feldman as attorney fees. The C&R was served on Barrett or on Barrett's counsel. At no point did Feldman change the incorrect address on the C&R.

On September 30, 2008, Barrett mailed a $3,000 check to Feldman and mailed a $17,000 check to Rivas to the address on the C&R, 1556 West Evans Street, San Bernardino, California. The $17,000 check was fraudulently endorsed by "Rafal Rivas" and cashed at American Check Cashing in Rancho Cucamonga, California. The fraudulent endorser presented a permanent address residence card from Mexico with a date of birth different from Rivas's date of birth. Rivas denied having any permanent residence card and presented an El Salvador driver's license instead.

In December 2008 Rivas informed Barrett that he had not received the settlement check. Barrett tried to stop the check, but it had already been cashed. At Barrett's request Rivas executed an affidavit and indemnity agreement on January 2, 2009. Rivas received no further correspondence from Barrett.

At 1556 West Evans Street, Rivas and his wife lived with her nephew, Gabriel Pastillo, who owns the house at 1556 West Evans Street and still lives there. Rivas knew of no specific information that would lead him to

believe that Pastillo cashed the check, and Rivas had never talked to Pastillo about the check. Rivas did not recognize the signature on the check as being the handwriting of Pastillo or of anyone else he knows.

On January 25, 2010, Rivas filed a declaration of readiness to proceed, seeking WCAB assistance because Rivas had not received the settlement check. After being continued, the matter came on for trial on December 6, 2010.

On February 10, 2011, the workers' compensation administrative law judge (WCALJ) issued an opinion on decision and "Findings, Order and Award." The WCALJ agreed with cases placing the unsatisfied obligation of payment on a defendant that agreed to pay pursuant to a settlement agreement. The WCALJ found that Rivas should not be the one to pursue remedies from other responsible parties where he was not at fault and was the designated beneficiary of this benefits delivery system, and that Barrett was in a better position to pursue legal action against responsible parties. The WCALJ thus held Barrett liable to pay settlement proceeds to Rivas. The Findings, Order and Award determined that because settlement amounts due Rivas pursuant to the C&R were not previously paid to him, Barrett was still liable to pay Rivas $17,000 once his current address was confirmed in writing.

Barrett filed a petition for reconsideration with the WCAB, which was denied on April 8, 2011.

On May 23, 2011, Barrett filed a petition for writ of review in this court, seeking reversal of the WCAB's order denying reconsideration. We granted the petition, issued a writ of review, and received a copy of the records and documents reviewed by the WCAB on the petition for reconsideration and full briefing from the parties.

## ISSUE

Barrett claims that the WCAB erred in ordering Barrett to pay Rivas $17,000 after it had discharged its original obligation by mailing a $17,000 settlement check to the address designated by Rivas in the C&R agreement.

## DISCUSSION

California Uniform Commercial Code section 3420 and the Uniform Commercial Code Comment to that statute address the problem in this

petition, which is who must bear the loss when a stolen check with a forged indorsement is cashed and the payee never receives the check.

Section 3420, subdivision (a), of the California Uniform Commercial Code provides in part that "[a]n action for conversion of an instrument may not be brought by . . . a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee."[1]

■ The comment to California Uniform Commercial Code section 3420, a conversion statute, specifically deals with the facts of this case. The comment notes that "the payee [(Rivas)] has no conversion action because the check was never delivered to the payee. Until delivery, the payee does not have any interest in the check. The payee never became the holder of the check nor a person entitled to enforce the check. Section 3-301. Nor is the payee injured by the fraud. Normally the drawer[2] of a check intends to pay an obligation owed to the payee. But if the check is never delivered to the payee, the obligation owed to the payee is not affected. If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, *the obligation owed to the payee continues to exist after the thief receives payment*. Since the payee's right to enforce the underlying obligation is unaffected by the fraud of the thief, there is no reason to give any additional remedy to the payee." (U. Com. Code com., 23A pt. 2 West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 3420, p. 508, italics added (Cal. U. Com. Code Section 3420 Comment).)

The comment also addresses the rights of the other parties to the transaction. The comment continues, "[t]he drawer of the check has no conversion remedy, but the drawee[3] is not entitled to charge the drawer's account when the drawee wrongfully honored the check. The remedy of the drawee is

---

[1] California Uniform Commercial Code section 3420, subdivision (a), states in full: "The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (1) the issuer or acceptor of the instrument or (2) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee."

[2] " 'Drawer' means a person who signs or is identified in a draft as a person ordering payment." (Cal. U. Com. Code, § 3103, subd. (a)(3).)

[3] " 'Drawee' means a person ordered in a draft to make payment." (Cal. U. Com. Code, § 3103, subd. (a)(2).)

against the depositary bank for breach of warranty under Section 3-417(a)(1) or 4-208(a)(1). The loss will fall on the person who gave value to the thief for the check." (Cal. U. Com. Code Section 3420 Comment, *supra*, at p. 508.)

■ The important point is that where the issuer[4] (Barrett) does not deliver the check to the payee (Rivas), the issuer remains liable to the payee on the underlying obligation. (*Dahn v. Dahn* (Mo.Ct.App. 2011) 346 S.W.3d 325, 339; *Jackson v. 2109 Brandywine* (2008) 180 Md.App. 535 [952 A.2d 304, 320–321]; *Berhow v. The Peoples Bank* (S.D.Miss. 2006) 423 F.Supp.2d 562, 568.) Delivery to Rivas did not occur; Rivas never received the check. Consequently Barrett remains liable to Rivas on the underlying obligation. The WCALJ therefore correctly found Barrett was liable to pay settlement proceeds to Rivas.

■ Barrett argues that mailing the settlement check to Rivas at the address specified in the C&R agreement discharged its obligation to Rivas. Barrett relies on Civil Code section 1476, which states: "If a creditor . . . at any time directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner, even though the creditor does not receive the benefit of such performance." Barrett contends that Rivas, in the C&R, specified the address at 1556 West Evans Street in San Bernardino to which the settlement check was mailed, and this amounted to a legal direction to Barrett to pay settlement proceeds to that address by mail. Barrett, however, drafted the C&R, not Rivas. Moreover, despite having stopped using Pinnacle Claims Services as its claims adjusting agent in 2007 and taking its claims unit in-house, Barrett did not give notice of this change, and the workers' compensation file still listed Pinnacle Claims Services as adjuster of record as late as February 10, 2010. Thus Rivas's attorney served a notice of Rivas's change of address to 214 South Fairmont Avenue, Tyler, Texas, on June 11, 2008, on defense counsel and on Pinnacle Claims Service, but notice of this change of address was not in Barrett's claims file. The 214 South Fairmont Avenue, Tyler, Texas address was Rivas's address at the time the settlement check was sent. It cannot be said that Rivas directed the debtor (Barrett) to perform its obligation in a particular manner, i.e., by directing Barrett to send the settlement check to 1556 West Evans Street in San Bernardino. Consequently Civil Code section 1476 does not extinguish Barrett's obligation.

---

[4] " 'Issuer' applies to issued and unissued instruments and means a maker or drawer of an instrument." (Cal. U. Com. Code, § 3105, subd. (c).)

## DISPOSITION

The WCAB order denying reconsideration is affirmed. The parties are ordered to bear their own costs on the writ petition.

Croskey, Acting P. J., and Aldrich, J., concurred.