Filed 4/4/17

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| SLEEP EZ, | ) | No. BV 031618 |
| | ) | |
| Plaintiff and Appellant, | ) | Central Trial Court |
| | ) | |
| v. | ) | No. 15U11111 |
| | ) | |
| MARTINIANO MATEO et al., | ) | |
| | ) | |
| Defendants and Respondents. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine Mandel, Judge.  Affirmed.

Law Office of Allen R. King and Allen R. King for Plaintiff and Appellant Sleep EZ.

Neighborhood Legal Services, Alexander Prieto and Jeffrey Uno for Defendants and Respondents Martiniano Mateo and Maximina Mateo.

\*            \*            \*

1

INTRODUCTION

We hold here that, when a tenant mails rent at a landlord's direction and, through no fault of the tenant, the landlord does not receive it, the tenant is not in default in the payment of rent in an unlawful detainer action.

Plaintiff and appellant Sleep EZ appeals the judgment in favor of defendants and respondents Martiniano Mateo and Maximina Mateo. Plaintiff contends the judgment should be reversed because it proved all the elements of its cause of action, including that defendants defaulted in paying their rent. As discussed below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleged in its complaint that the parties had a written agreement wherein defendants were to pay rent in the amount of $523.98 per month, and defendants failed to pay rent as indicated in an attached three-day notice to pay or quit. On September 8, 2015, the statutory notice period expired with defendants neither paying rent nor vacating their apartment. Plaintiff requested it be awarded possession of the property, along with damages, attorney fees, and costs. The three-day notice indicated defendants were informed on September 5, 2015, that the rent of $523.98, which was due on September 1, 2015, had not been paid, and directed defendants to pay the rent or vacate the property. Defendants answered, generally denying the allegations in the complaint, including that they had defaulted in paying their rent, and the case proceeded to trial.

At the court trial on October 15, 2015, plaintiff's manager, Victor Ricks, testified defendants rented one of plaintiff's apartments pursuant to a written rental agreement, a copy of which was admitted as an exhibit. The agreement required defendants to pay $523.98 in rent on the first of every month. Ricks instructed tenants to pay their rent by mail to a post office box address, and to always pay by money order. Ricks did not receive the September rent by September 5, 2015, so he prepared a three-day notice. The notice period expired, Ricks did not receive the rent, and defendants remained in possession of the apartment.

Defendant Maximina Mateo testified Ricks instructed her family to pay the monthly rent by sending money orders to a post office box. On August 31, 2015, she purchased a

2

United States Post Office money order in the amount of $523.98. On this same date, she mailed the money order to Ricks at the designated post office box address, as she had done for the past 30 years she had been living in the apartment with her family. A copy of the customer's receipt for the $523.98 paid to the post office for the money order was admitted into evidence. Ms. Mateo testified that, on the day of trial, she received the envelope she had sent to Ricks back from the post office with a yellow sticker stating it was undeliverable. The sealed envelope addressed to Ricks was admitted into evidence.

Ms. Mateo's 17-year-old son, Henry Mateo, testified that, after the three-day notice was posted on their apartment door, he made five to six attempts to speak with Ricks by telephone to determine if the money order had been received. He reached Ricks only once, and Ricks told him he had not yet had a chance to check the post office box.

On rebuttal, Ricks testified "he had never agreed that the mailing of the rent would constitute payment, whether the check was received or not." Ricks further testified he never received or successfully negotiated defendants' money order for the September 2015 rent.

The court rendered judgment in favor of defendants. In its statement of decision, the court indicated it found as follows: "1. Defendants purchased a money order for the full amount of the rent due for September [¶] 2. Defendants mailed the money order to Mr. Ricks, with postmark August 31, 2015 [¶] 3. The Lease states that rent is to be paid 'to landlord by U.S. Mail.' [¶] 4. Mr. Ricks did not receive the money order [¶] 5. Defendants remain in possession of the unit [¶] 6. Defendants have not paid September rent."

The court further stated it found defendants mailed their rental payment as directed by plaintiff and "[t]heir payment was not received by plaintiff through no fault of their own." The court indicated defendants were entitled to judgment because they had timely sought to pay their rent by mailing their money order as directed by plaintiff.

DISCUSSION

To prove its cause of action, plaintiff was required to establish defendants defaulted in the payment of rent and failed to comply with the three-day notice stating the amount due. (See Code Civ. Proc., § 1161, subd. (2).) Plaintiff argues there was no substantial evidence to

3

support the court's determination that defendants' mailing of the money order on August 31, 2015, was sufficient to avoid a default under the rental agreement. Plaintiff also argues it established the remaining elements of its cause of action. As we conclude the mailing of rent constituted payment for purposes of avoiding a default, we do not address whether the remaining elements of the cause of action were proved.

*Allocation of Risk When Payment is Mailed at a Landlord's Direction*

Ordinarily, "'[p]ayment is not effectuated by sending the amount due to the creditor by mail or other public carrier until the remittance gets into the hands of the creditor, . . .' [Citations.]" (*Cornwell v. Bank of America* (1990) 224 Cal.App.3d 995, 999 (*Cornwell*).) When the issuer of a check "does not deliver the check to the payee . . . , the issuer remains liable to the payee on the underlying obligation. [Citations.]" (*Barrett Business Services, Inc. v. Workers' Comp. Appeal Bd.* (2012) 204 Cal.App.4th 597, 603 (*Barrett*).)

But, Civil Code section 1476 provides, "If a creditor, or any one of two or more joint creditors, at any time directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner, even though the creditor does not receive the benefit of such performance."

Civil Code section 1476 applies when the party owed money directs the debtor to pay by mail and payment is not actually received. "'When a creditor directs a debtor to mail payment, it is deemed that the payment is made when it is deposited in the mail. Otherwise, the payment is not effective until received by the creditor.' [Citations.]" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439-440 (*Nguyen*), italics omitted; accord, *Cornwell*, *supra*, 224 Cal.App.3d at pp. 998-999 ["'if the creditor directs the debtor to send him the money by mail, the loss of the money in the mail is at the risk of the creditor[; b]ut in the absence of such a direction, the payment sent by mail or through a public carrier does not become operative until it gets into the hands of the creditor, and a mere general direction to remit money is not a consent to a remittance by mail at the creditor's risk'"]; *Barrett*, *supra*, 204 Cal.App.4th at p. 603 [same].)

Plaintiff argues Civil Code section 1476 does not apply when a United States Postal Service money order is used to pay a debt, because the money order is an uncertified check, and

4

its effect on the underlying rent obligation is controlled by California Uniform Commercial Code section 3310. Plaintiff points out that, pursuant to California Uniform Commercial Code section 3310, a money order remains unnegotiated until it is honored.

California Uniform Commercial Code section 3310 provides in relevant part, "(a) Unless otherwise agreed, if a certified check, cashier's check, or teller's check is taken for an obligation, the obligation is discharged to the same extent discharge would result if an amount of money equal to the amount of the instrument were taken in payment of the obligation. . . . [¶] (b) Unless otherwise agreed and except as provided in subdivision (a), if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply: [¶] (1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check."

California Uniform Commercial Code section 3310 is inapplicable because, by its own terms, it is triggered only when an instrument "is taken for an obligation." This "refers to a situation in which the debtor has delivered an instrument with the intention that it constitute conditional payment for the underlying obligation and the creditor has accepted it as conditional payment for the underlying obligation." (*Canal-Randolph Anaheim, Inc. v. Wilkoski* (1978) 78 Cal.App.3d 477, 490.) In a situation where the payment remains undelivered, it is clearly not *accepted* for payment. California Uniform Commercial Code section 3310 does not apply when Civil Code section 1476 is satisfied. Civil Code section 1476 specifies that, when a debtor performs as directed by the creditor, "the obligation is *extinguished* by performance in that manner," and this occurs "even though the creditor does not receive the benefit of such performance."

The California Uniform Commercial Code is intended to preempt statutes that contradict or are inconsistent with its terms. (See Cal. U. Com. Code, § 1103, subd. (b).) California Uniform Commercial Code section 3310 does not address the legal effect of an instrument

5

which is lost prior to it being "taken" by the creditor. The only portion of the section dealing with lost instruments specifically requires the creditor to once have been in possession. (Cal. U. Com. Code, § 3310, subd. (b)(4).) This provision indicates a creditor may enforce an instrument it once had in its possession which was lost or destroyed by bringing an action on the instrument. (Cal. U. Com. Code, § 3310, subd. (b), com. 4.) A creditor cannot bring an action on the instrument unless it once possessed the item and then lost it. (See *Crystaplex Plastics, Ltd. v. Redevelopment Agency* (2000) 77 Cal.App.4th 990, 996 [agreeing with a treatise that found when "'the drawer had entrusted a messenger with delivery of the check to the payee, and the messenger instead chose to flee to Jamaica with the check, the payee would not be able to enforce the instrument because the payee would not have had possession at the time of the loss'"].)

Also, as explained by the comments to the Uniform Commercial Code, the preemptive effect of the code must yield when "other interpretative principles addressing the interrelationship between statutes may lead the court to conclude that the other statute is controlling, even though it conflicts with the Uniform Commercial Code. This, for example, would be the result in a situation where the other statute was specifically intended to provide additional protection to a class of individuals engaging in transactions covered by the Uniform Commercial Code." (Official Comments on U. Com. Code, com. 3, reprinted at 23A West's Ann. Cal. U. Com. Code, § 1103 (2017 pocket supp.) p. 14; *Zengen, Inc. v. Comerica Bank* (2007) 41 Cal.4th 239, 248 [Official Comments on U. Com. Code are persuasive when Legislature adopted section in question exactly as written].)

If California Uniform Commercial Code section 3310 were always required to apply to extinguish debts paid by negotiable instruments, Civil Code section 1476 would never apply when negotiable instruments were mailed at a creditor's direction. "Repeals by implication are disfavored. [Citations.]" (*Center for Biological Diversity v. Department of Fish & Wildlife* (2016) 1 Cal.App.5th 452, 466.) Civil Code section 1476 provides additional protections beyond those delineated in the California Uniform Commercial Code to a class of individuals, namely, persons ordered to make payments only by mail. In the landlord-tenant context,

beneficiaries of this rule are exemplified by persons such as defendants, who dutifully pay their monthly rent and whose payment is lost through no fault of their own. Even if the negotiable instruments law conflicted with Civil Code section 1476, we are persuaded the latter controls.

The Court of Appeal's opinion in *Cornwell* does not compel a contrary result. In *Cornwell*, the debtor sued a creditor bank, claiming his mailing of a monthly mortgage check at the bank's direction extinguished his debt to pay for that month, even though the bank had not received the check. The Court of Appeal held that because the bank did not order the debtor to pay exclusively by mail, Civil Code section 1476 was inapplicable. (*Cornwell*, *supra*, 224 Cal.App.3d at p. 1000.) The Court of Appeal further indicated that, even if the bank had directed a particular manner of payment, as required by Civil Code section 1476, the parties would have also needed to agree to alter the conditional payment rule contained in the predecessor to California Uniform Commercial Code section 3310 in order to extinguish the debt before the instrument was honored. (*Id.* at pp. 1000-1001.) This discussion was dicta, because in *Cornwell*, as in our case, the instrument was not received. *Cornwell* therefore does not stand for the proposition that, when a negotiable instrument is mailed at a creditor's direction, the negotiable instruments statute controls its effect. (See *Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1006 ["Mere observations by an appellate court are dicta and not precedent"].)

*Application of Law to the Present Case*

As a preliminary matter, we reject plaintiff's argument that the trial court's finding in its statement of decision that "Defendants have not paid September rent" is dispositive of whether they defaulted in payment of rent. The court's finding must be read in context with its further determination in the statement that it ruled in defendants' favor because defendants timely sought to pay their rent by mailing their money order as directed by plaintiff, and the money order was "not received by plaintiff through no fault of their own." To the extent the statement is ambiguous on this point, we interpret it to favor affirming the judgment. (*Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535.)

7

There was substantial evidence defendants mailed their September rent and, through no fault of their own, plaintiff never received the money order. (See *Perez v. VAS S.p.A.* (2010) 188 Cal.App.4th 658, 683 [appellate court reviewing judgment for sufficiency of evidence determines if "'"'there is substantial evidence, contradicted or uncontradicted, which will support the determination'"'"].) Ms. Mateo testified she mailed the money order to the post office box designated by Ricks, and the sealed envelope addressed to Ricks which was returned as undeliverable by the post office was admitted into evidence. The envelope was addressed to "Victor Ricks [¶] P.O Box 451133 [¶] L.A, Ca 90045." Although, aside from Ms. Matteo's testimony, the record on appeal does not indicate whether this was the address provided by Ricks for rental payments, we presume this was the case. (See *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1201 [when the record is silent, "[w]e must . . . presume that what occurred at . . . [trial] supports the judgment"].)

There was also substantial evidence the mailing of the money order was done at plaintiff's command. A copy of the parties' rental agreement was admitted as an exhibit, and it stated rent was to be paid "to landlord by U.S. Mail." Ricks and Ms. Mateo testified Ricks instructed defendants to pay rent by mail to a post office box using a money order. Ms. Mateo testified she had paid rent in this manner for 30 years.

Pursuant to Civil Code section 1476, defendants' obligation to pay the September rent was extinguished by the mailing of the money order. Ricks's direction to pay exclusively by mail shifted the risk of loss onto plaintiff, and therefore defendants were not in default in the payment of rent on September 1, 2015. Accordingly, there was substantial evidence plaintiff did not satisfy its action under Code of Civil Procedure section 1161, subdivision (2).

Plaintiff relies on Ricks's testimony—that "he had never agreed that the mailing of the rent would constitute payment, whether the check was received or not"—in arguing that mailing the money order did not constitute payment. However, Henry Mateo testified he spoke with Ricks after the three-day notice was served, and Ricks told him he had not checked the post office box to determine if the money order had been received. This undermined Ricks's credibility, because, if he had failed to check the post office box, he would not have been able

8

to say defendants defaulted in paying the rent by September 5, 2015 and later refused to comply with the three-day notice. (See *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204 [even if a witness's testimony is uncontradicted, "so long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of [the] witness"].)

More importantly, Ricks also testified he directed defendants to pay rent exclusively by mail. His testimony regarding the *effect* of paying rent by mail if it was not received, even if believed by the court, was inconsistent with Civil Code section 1476. This section provided defendants' obligation to pay rent was extinguished by performance in the manner plaintiff specified, even though plaintiff did "not receive the benefit of such performance." Ricks could not unilaterally alter the effect of the statute.

Plaintiff appears to argue Ricks's testimony was evidence the parties agreed to terms different than those contained in Civil Code section 1476. We assume, without deciding, the parties could lawfully waive the effect of Civil Code section 1476. (But see *Tower Acton Holdings v. Los Angeles County Waterworks Dist. No. 37* (2002) 105 Cal.App.4th 590, 601 ["a law established for a public reason cannot be waived or circumvented by a private act or agreement"].) Yet, the record is silent on the existence of any such waiver or agreement. It is well established it is the appellant's burden to provide an adequate record on appeal that affirmatively demonstrates error (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1200), and we presume any testimony on this issue supported the judgment (*id.* at p. 1201).

Moreover, under these circumstances, it would be unreasonable to construe the record as reflecting that defendants agreed to waive the effect of Civil Code section 1476. Defendants resided in their apartment for 30 years, and plaintiff specifically directed them to pay by money order and *only* through the mail. They did so, month after month through the years and, by no fault of their own, plaintiff did not receive their latest money order. Defendants were prohibited by plaintiff from paying in person, which would have eliminated the risk plaintiff would not receive their rent. We presume from the silent record plaintiff had not placed

9

defendants in the untenable position of being subject to eviction from their home when they faithfully complied with the landlord's instructions in the mailing of their rent.

DISPOSITION

The judgment is affirmed.  Defendants to recover costs on appeal.

_____

RICCIARDULLI, Acting P. J.

We concur:

_____          _____

B. JOHNSON, J.                            C. LEE, J.*

*Retired judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.