Filed 1/9/25  Rancho San Joaquin Homeowners Assn. v. Aulisio CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RANCHO SAN JOAQUIN HOMEOWNERS ASSOCIATION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANTHONY AULISIO, JR., <br><br> Defendant and Appellant. | G062595 <br><br> (Super. Ct. No. 30-2019-01075005) <br><br> ORDER MODIFYING OPINION; AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on December 13, 2024, be modified as follows:

1. Footnote 4 will be inserted at the conclusion of the second full paragraph on page 8 (following "granting the HOA's motion for nonsuit.") and will read as follows:

   "Aulisio also argued the nuisance was an unabatable continuing nuisance and, therefore, not barred by the applicable statutes of limitation. The burden on the claim of continuing nuisance was Aulisio's, however, and he failed to present evidence at trial that

the water shutoff continued beyond 2013 (or far enough beyond 2013) so as to render his claim not time-barred."

2. Footnote 4 on page 13 will be renumbered as footnote 5.

There is no change in the judgment.

Appellant Anthony Aulisio, Jr.'s petition for rehearing filed December 27, 2024, is denied.

GOODING, J.

WE CONCUR:

O'LEARY, P. J.

DELANEY, J.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RANCHO SAN JOAQUIN HOMEOWNERS ASSOCIATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY AULISIO, JR.,<br><br>Defendant and Appellant. | G062595<br><br>(Super. Ct. No. 30-2019-01075005)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge. Affirmed.

Anthony Aulisio, Jr., in pro. per., for Defendant and Appellant.

Feldsott, Lee & Nichter and Austin Nichter for Plaintiff and Respondent.

The Rancho San Joaquin Homeowners Association (HOA) sued homeowner Anthony Aulisio, Jr., for failure to pay monthly assessments. A jury rendered a verdict in favor of the HOA, and Aulisio appeals from the resulting judgment. Aulisio contends the trial court erred by (1) denying his motion to reopen discovery; (2) granting the HOA's motion for nonsuit on Aulisio's cross-complaint against the HOA; (3) excluding evidence of two checks written by Aulisio that he contends should have been applied to his monthly assessments; and (4) denying his motion for nonsuit on the HOA's complaint. We find no error in any of the rulings and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The HOA is a nonprofit mutual benefit corporation that operates and manages a planned residential development in the city of Irvine. Aulisio owns a condominium in that development (the property). When Aulisio acquired the property in 1997, he became bound by the HOA's Declaration of Covenants, Conditions and Restrictions (CC&Rs). Aulisio was obligated to pay monthly assessments to the HOA of $486. He did not always make his payments, however, which ultimately led to two lawsuits. Although this appeal is only from the judgment in the second lawsuit, some of the facts pertinent to the first lawsuit have been put at issue here, so we summarize both actions.

*The First Lawsuit*

The first lawsuit commenced in May 2015, when the HOA sued Aulisio for unpaid assessments accruing between 2012 and 2015. Aulisio contends that several months later, in November 2015, he mailed a cashier's check in the amount of $16,432.89. The HOA's attorney advised Aulisio the check was never received by his office, and the HOA continued to pursue its claim against Aulisio.

The trial court entered Aulisio's default in December 2015, and the HOA obtained a default judgment against Aulisio in January 2016 in the amount of $18,395.65.[1] After the trial court denied Aulisio's motion to vacate the default judgment. Aulisio satisfied the judgment in January 2016.

*The Second Lawsuit*

By July 2018, Aulisio was again in arrears on his monthly assessments, and the HOA sent Aulisio a pre-lien notice and demand for outstanding assessments, interest, late charges, and attorney fees. At that time, the total amount owed by Aulisio to the HOA was $4,844.70. These unpaid assessments (and related charges) were separate from and in addition to those that were the subject of the 2016 default judgment.

In June 2019, based on the new arrearages, the HOA filed its second lawsuit against Aulisio for breach of the CC&Rs, to foreclose an assessment lien, and for money owed. This second lawsuit is the one now before us.

In its second lawsuit, the HOA sought damages in the total amount of $13,522.24 for HOA assessments, late fees, attorney fees and costs, collection fees, and interest. Because the total amount sought in damages was less than $25,000, the matter was classified as a limited civil case. In October 2019, Aulisio filed a cross-complaint, in which he asserted claims for trespass, nuisance, violation of the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq. (Davis-Stirling Act)), negligence, and declaratory relief, and sought damages in excess of $25,000. Trial was scheduled for March 22, 2021.

---

[1] An amended judgment was entered on March 23, 2017, but the amount of the judgment was unchanged.

On March 19, 2021, just three days before trial was set to commence, Aulisio, through his then-attorney of record, made an ex parte request to continue the trial date. The request cited both the recent death of a close family member of the attorney and the breakdown of the relationship between Aulisio and his counsel. Aulisio asked that the trial be continued long enough to give him time to obtain new counsel. The trial court granted Aulisio's ex parte application and continued trial by about five months, to August 2021; the court's minute order specifically ruled "All discovery cut-offs remain[]."

A few months later, in May 2021, Aulisio's new counsel filed an ex parte request that the case be reclassified as an unlimited civil case because Aulisio's cross-complaint sought more than $25,000 in damages. Aulisio's counsel acknowledged the trial date was less than three months away, but did not ask that discovery be reopened. Counsel simply argued it was important for the classification issue to be addressed quickly because knowing whether the case would be classified as limited or unlimited would affect his trial preparation. The trial court granted the request, reclassified the case as an unlimited civil action, and vacated the August 2021 trial date. The court's order did not address discovery or its previous order regarding the discovery cut-off.

On April 14, 2022, Aulisio, now representing himself, sought ex parte relief to continue the trial date and to reopen discovery. (At that point, trial was scheduled for May 9, 2022, less than one month away.) The HOA filed opposition. The trial court denied both of Aulisio's requests.

The HOA filed a motion in limine to exclude evidence regarding Aulisio's claimed $16,432.89 payment in 2015 that was never received by the HOA, as well as the $18,395.65 payment he made to satisfy the default

4

judgment in the first action. Over Aulisio's opposition, the trial court granted the motion.

A jury trial began in November 2022.

During trial, Aulisio filed a motion for nonsuit on the ground the HOA had failed to prove he owed the HOA any money due to his previous payments of $16,432.89 and $18,395.65; the trial court denied that motion. After Aulisio rested his case on the cross-complaint, the HOA made a motion for nonsuit on the cross-complaint, which the trial court granted.

The jury rendered a verdict in favor of the HOA on its claims against Aulisio for breach of the CC&Rs and for money owed and awarded the HOA $36,939.02 in damages. The trial court issued a statement of decision on the second cause of action to foreclose an assessment lien, finding in favor of the HOA.

In March 2023, the trial court signed a judgment for money damages and foreclosure of an assessment lien. The HOA acknowledged a partial satisfaction of the judgment in the amount of $29,000.

Aulisio filed a notice of appeal.

DISCUSSION

I.

AULISIO'S MOTION TO REOPEN DISCOVERY

Code of Civil Procedure section 2024.050 governs requests to reopen discovery.[2] Whether to grant such requests lies within the trial court's discretion. (*Id.*, subd. (b).) We therefore review the court's denial of Aulisio's motion to reopen discovery under an abuse of discretion standard. (*Cottini v.*

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Enloe Medical Center* (2014) 226 Cal.App.4th 401, 418.) "'"""'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason."'"""' (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 591.)

Section 2024.050 identifies a series of factors for the trial court to consider when ruling on a motion to reopen discovery. They are: "(1) The necessity and the reasons for the discovery. [¶] (2) The diligence or lack of diligence of the party seeking the discovery or the hearing of a discovery motion, and the reasons that the discovery was not completed or that the discovery motion was not heard earlier. [¶] (3) Any likelihood that permitting the discovery or hearing the discovery motion will prevent the case from going to trial on the date set, or otherwise interfere with the trial calendar, or result in prejudice to any other party. [¶] (4) The length of time that has elapsed between any date previously set, and the date presently set, for the trial of the action." (*Id.*, subd. (b).)

Based on the record before us, we conclude all of the factors identified in section 2024.050, subdivision (b) support the trial court's denial of Aulisio's motion to reopen discovery. The court did not abuse its discretion. The motion did not discuss any necessity or reasons for the additional discovery requested; Aulisio stated that interrogatories, requests for admissions, and requests for production of documents were served on the HOA after the discovery cutoff, but he provided no further explanation of what he sought by that discovery. Moreover, Aulisio did not act diligently in seeking the discovery. He did not serve the discovery on the HOA until July 2021, two months *after* the trial court reclassified the case as unlimited civil. The HOA's counsel immediately advised Aulisio's counsel that the court had not reopened discovery and the HOA therefore would not respond to the

6

discovery. Yet Aulisio inexplicably waited nine months to seek an order from the trial court to reopen discovery. By the time he finally filed his motion to reopen discovery, trial was less than one month away, so it was a certainty that reopening discovery would prevent the case from going to trial on the scheduled date. Finally, the trial originally was set for March 22, 2021. When that date was continued, the court noted the discovery cutoff had already passed and ruled that it was not reopened. That ruling was never modified.

Aulisio asserts, without any support, that discovery reopened automatically when he filed his cross-complaint. The HOA argues the issue has been forfeited due to Aulisio's failure to present argument and legal authority on appeal to support his contention. We agree. "'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.'" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them"].)

II.

HOA'S MOTION FOR NONSUIT ON AULISIO'S CROSS-COMPLAINT

Aulisio argues the trial court erred in granting the HOA's motion for nonsuit on Aulisio's cross-complaint. "In reviewing a judgment of nonsuit, we view the evidence in the light most favorable to [Aulisio]. We affirm only if we find as a matter of law that [Aulisio] could not have prevailed at trial even if the jury had accepted all [his] evidence as true and resolved all factual

conflicts in [his] favor." (*Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 761.)

Aulisio's cross-complaint alleged that, in January 2013, the HOA switched out the locks of his condominium and caused water service to his condominium to be shut off. At trial, however, Aulisio testified the locks were changed sometime between 2007 and 2010 and that he had received the keys to the new locks the next day. As to the termination of the water service, Aulisio testified he was aware the HOA turned off his water in 2013. Aulisio admitted in his testimony that he had tried to sue the HOA in 2015 for turning off the water, but he was defaulted in that case. Aulisio also admitted he did not pursue this claim further until he filed his cross-complaint in 2019.

Aulisio's testimony showed that all of his claims were barred by the applicable statutes of limitations. The longest possible limitations period was for Aulisio's Davis-Stirling Act claim, which is five years. (§ 336, subd. (b); Civ. Code, § 784.)[3] Therefore, because all causes of action in Aulisio's cross-complaint were based on conduct that allegedly occurred in 2013 or earlier, they were time barred, and the trial court did not err in granting the HOA's motion for nonsuit.

The trial court also granted the HOA's motion for nonsuit on Aulisio's nuisance claim on the additional ground that Aulisio had failed to establish the HOA's actions in turning off the water in 2013 had created or permitted a condition that was harmful to health or obstructed Aulisio's free use of the property in a way that interfered with Aulisio's comfortable

---

[3] The other relevant limitations period would be four years for the violation of the CC&Rs (§ 337, subd. (b)); two years for breach of an oral contract (§ 339, subd. (1)); three years for trespass or injury to real property (§ 338, subd. (b)); and four years under the catch-all statute (§ 343).

enjoyment of his life or the property. (Civ. Code, § 3479; *Wilson v. Southern California Edison Co.* (2018) 21 Cal.App.5th 786, 802.) The trial court found that although turning off the water made the property temporarily unhabitable, Aulisio's handyman testified it easily could have been turned back on with a lever.

In sum, even accepting all of Aulisio's evidence as true, Aulisio could not have prevailed on his cross-complaint as a matter of law. The trial court did not err in granting nonsuit on his cross-complaint.

## III.

### AULISIO'S MOTION FOR NONSUIT ON THE HOA'S COMPLAINT AND THE HOA'S MOTIONS IN LIMINE

Aulisio moved for nonsuit on the HOA's complaint based on his contention that the two payments he allegedly made to the HOA in connection with the first lawsuit extinguished the debt that is the basis for the present lawsuit. The trial court granted the HOA's motion in limine to preclude Aulisio from presenting evidence of those payments at trial and denied Aulisio's motion for nonsuit, which was based on those alleged payments. We find no error in either ruling.

*A. Factual Background*

As noted above, in November 2015, after the HOA filed its complaint in the first lawsuit, Aulisio claimed to have mailed a cashier's check in the amount of $16,432.89. Although the HOA's attorney advised Aulisio the check was never received by his office, the appellate record does not show Aulisio ever sent a replacement check. As a result, a default judgment was entered against Aulisio in the first lawsuit in January 2016 in the amount of $18,395.65, and Aulisio satisfied the judgment to avoid foreclosure on this property.

Fast forward to the second lawsuit, which is the subject of this appeal. Aulisio argued his cashier's check and later payment in satisfaction of the judgment in the first lawsuit meant that he did not owe the HOA anything on the new claimed arrearages at issue in the second lawsuit. The HOA moved in limine to preclude Aulisio from introducing evidence of the lost check and his payment of the judgment amount in the first action.

In opposition to the motion in limine, Aulisio filed a declaration stating as follows: "On November 16, 2015, following instructions provided by Plaintiff's then-attorney, Richard Hartman Ober, Defendant sent a Cashier's Check in the amount of $16,432.89 as payment of the assessments and fees then due. . . . The check was placed in an envelope correctly addressed to Plaintiff's attorney at the address provided by Plaintiff's attorney and deposited with the U.S. Postal Service with correct postage there on. [sic] This payment was made prior to any judgment being entered in Case No. 30-2015-00785949-CL-CL-CJC [2015 Case.] and was not made to 'satisfy a prior judgment' as contended by Plaintiff's current counsel in its moving papers. Attorney Ober claimed he did not receive the check and proceeded with the collection action in the 2015 Case. Despite Attorney Ober's denial of receipt of the check, the envelope containing the check was never returned to me by the U.S. Postal Service. In 2019, I was informed by the bank that the Cashier's Check had not been cashed and the money was returned to me. Thus, Plaintiff or its attorney was in possession of the check and the funds it represented from November 16, 2015 until 2019. Plaintiff did not credit these amount towards any assessments that were due in the past or during the period that Plaintiff was in possession of the check."

Aulisio contends his debt to the HOA was extinguished by the mailing of the $16,432.89 check, and the later $18,395.65 check therefore

10

should have been applied to his future assessments as they became due. As we show below, his argument fails.

*B. Standards of Review*

We review a trial court's order excluding evidence for abuse of discretion. (*In re Marriage of Lietz* (2024) 99 Cal.App.5th 664, 671.)

"A defendant is entitled to a nonsuit if the trial court determines the evidence presented by plaintiff is insufficient to permit a jury to find in his or her favor as a matter of law. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.'" (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 650.) "[A]ll reasonable inferences to be drawn from the evidence are drawn against the moving defendant and in favor of the plaintiff." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750.) We review denial of a nonsuit motion de novo, applying the same standard as the trial court. (*IIG Wireless, Inc. v. Yi, supra,* 22 Cal.App.5th at p. 650.)

*C. Analysis*

The $16,432.89 check was never cashed and there is no evidence contradicting the HOA's claim it never received the check. As a general rule, placing a check in the mail does not constitute a completed payment. (*Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 360; see *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439 ["'The deposit of a payment check in the mail does *not* constitute payment. The borrower assumes the risk that the deposited payment will [not] be delivered and received by the beneficiary'"]; *Cornwell v. Bank of America* (1990) 224 Cal.App.3d 995, 999 ["'Payment is not effectuated

11

by sending the amount due to the creditor by mail or other public carrier until the remittance gets into the hands of the creditor'"].)

There is an exception to this rule, however. If the creditor directs the debtor to make the payment "in a particular manner," and the debtor does so, then the payment is deemed to have been made even if the creditor never receives it. (Civ. Code, § 1476 ["If a creditor, or any one of two or more joint creditors, at any time directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner, even though the creditor does not receive the benefit of such performance"]; *Nguyen v. Calhoun, supra*, 105 Cal.App.4th at pp. 439–440 ["'When a creditor *directs* a debtor to mail payment, it is deemed that the payment is made when it is deposited in the mail'"]; *Cornwell v. Bank of America, supra*, 224 Cal.App.3d at p. 999 [general rule does not apply if the creditor "'expressly or by implication directs or consents that payment be so made, or such mode of payment is according to the usual course of dealings between the parties, from which the creditor's assent can be inferred'"]; *Sleep EZ v. Mateo* (2017) 13 Cal.App.5th Supp. 1, 3 ["[W]hen a tenant mails rent at a landlord's direction and, through no fault of the tenant, the landlord does not receive it, the tenant is not in default in the payment of rent in an unlawful detainer action"].)

Aulisio relies on Civil Code section 1476 and the cases following it, claiming the HOA directed him to send the certified check for $16,432.89 by mail, and the debt therefore was extinguished when he did so, even if it was never received by the HOA. The problem with this argument is that nothing in the appellate record supports Aulisio's contention that the HOA, through its attorney, directed him to make his 2015 payment in a particular manner. Aulisio cites the following language from an e-mail from the HOA's

12

attorney to Aulisio's then-attorney, dated November 23, 2015: "Costa Mesa is an executive suite that we use for meetings with clients. We don't have a staffed office. If he wants to hand deliver it to us there, he is free to do that. I don't know how quickly we will receive it, and I would hate for it to get lost in transition. [¶] On the other hand, we have a fully staffed office in Pasadena where our collections are handled. He can send it certified/overnight/two day delivery or however he wants to send it to ensure that it makes it here safely." This e-mail cannot be read to instruct Aulisio to make his payment in a specific manner, much less instruct him to mail it by first class mail. Indeed, it effectively does the opposite: The e-mail identifies no fewer than four different alternative ways to deliver the check to the attorney's office, not one of which is placing the check in the mail with first class postage paid.[4]

Aulisio failed to show the HOA directed him to make payment in a particular manner. Therefore, the $16,432.89 check cannot be deemed to have been received by the HOA as of the time of mailing. (See *Barrett Business Services, Inc. v. Workers' Comp. Appeals Bd.* (2012) 204 Cal.App.4th 597, 603 [Civ. Code, § 1476 does not extinguish obligation if it cannot be said creditor directed payment in a particular manner].) That check did not extinguish Aulisio's debt under the default judgment, and it was irrelevant for purposes of the trial on the later unpaid assessments. The trial court did not err in excluding it from evidence at trial.

---

[4] We note that Aulisio's argument suffers from a glaring inconsistency: Aulisio contends the November 23 e-mail is what directed him to put his check to the HOA into the mail, but his declaration in opposition to the motion in limine asserts that he mailed the check, pursuant to counsel's directions, on November 16, one week before he received the supposed directive.

13

Aulisio also argues the $18,395.65 check should have been credited against future assessments, rather than against the 2016 default judgment. He contends that if it had been so credited, he would have owed nothing to the HOA at the time its complaint in the second lawsuit was filed in June 2019. Of course, this argument is completely dependent on Aulisio's previous argument that the $16,432.89 check should be deemed to have been received by the HOA. Because we have rejected that argument, this argument also fails. The $18,395.65 check that paid off the 2016 default judgment was irrelevant to the present case regarding current unpaid assessments, and the trial court did not err by excluding evidence of it at trial.

Given that the trial court properly excluded evidence of both checks from trial, the evidence presented by the HOA that Aulisio had failed to pay his assessments, as well as late fees and other expenses, was more than sufficient to defeat Aulisio's nonsuit motion.

Aulisio argues the trial court should have issued a statement of decision on his nonsuit motion upon his request. To the contrary, "'[i]t is axiomatic that a statement of decision is required only as to issues of fact decided by the trial court [citation], not as to issues of law.'" (*Southern Cal. Gas Co. v. City of Vernon* (1995) 41 Cal.App.4th 209, 220–221.) The court's decision on the nonsuit motion was a determination of law. (See *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 ["A defendant is entitled to a nonsuit if the trial court determines that, as a *matter of law,* the evidence presented by plaintiff is insufficient to permit a jury to find in his [or her] favor" (italics added)].)

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.